IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION | Civil Action No. |
| *v.* | 1:22-CV-03252-ELR |
| RAHIM MOHAMED, DAVIES ("DAVE") WONG, GLENN B. LAKEN, RICHARD C.S. TANG, ZOLTAN NAGY, JEFFREY D. COX, PHILLIP G. SEWELL, BREANNE M. WONG, CHRISTOPHE MERANI, ANNA TANG, ROBERT W. SEELEY, RICHARD B. SMITH, CHRISTOPHER R. SMITH, H.E. CAPITAL SA, POP HOLDINGS LTD, MAXIMUM VENTURES HOLDINGS LLC, HARMONY RIDGE CORP., and AVATELE GROUP LLC, | |
| Defendants, | |
| 9224-3708 QUEBEC, INC. a/k/a DISTRIBUTIONS BANO, and JASON BLACK, | |
| Relief Defendants. | |

**United States' Motion to Intervene and Motion for Stay of Discovery**

The United States of America, by Ryan K. Buchanan, United States Attorney, and Tal C. Chaiken, Assistant United States Attorney for the Northern District of Georgia, respectfully submits this motion to intervene in this case, pursuant to Rule 24(a) and (b) of the Federal Rules of Civil Procedure, and for a stay of discovery until such time as the criminal charges in *United States v. Mohamed*, *et al.*, 1:22-CR-00283-VMC-CMS, (N.D. Ga.) are resolved.

The U.S. Securities & Exchange Commission (the "SEC") and the United States Attorney's Office for the Northern District of Georgia (the "U.S. Attorney") have brought parallel cases against multiple individual defendants arising from an alleged market manipulation scheme involving Lotus Bio-Technology Development Corp. ("Lotus") and Good Gaming, Inc. ("Good Gaming"). Because the parallel proceedings arise out of the same scheme and share common questions of law and fact, the U.S. Attorney's motion to intervene for the limited purpose of seeking a discovery stay should be granted as of right or in the Court's discretion because the U.S. Attorney has a compelling law enforcement interest in intervening to protect the integrity of a federal criminal prosecution and ongoing investigation.

For similar reasons, the U.S. Attorney seeks a stay of discovery in this case because the strong public interest in protecting the integrity of the criminal case outweighs any potential prejudice to the defendants. A stay would prevent the civil discovery rules from subverting the criminal discovery process, serve the public interest by narrowing the factual and legal issues before this Court, and

facilitate a more efficient resolution of both actions. Counsel for the SEC has represented to the undersigned that the SEC does not oppose the requested stay. Counsel for defendants Rahim Mohamed, Richard Tang, Davies Wong, Glenn Laken, Breanne Wong, Phillip Sewell, and Anna Tang have also represented that they do not oppose the requested stay. Furthermore, SEC counsel advises that no objection is expected from Richard Smith, Christopher Smith, Robert Seeley, POP Holdings Ltd., and H.E. Capital S.A.  Zoltan Nagy informed SEC counsel that he opposes the requested stay and Christophe Merani informed the government that he opposes the requested stay. The government does not know the position of defendants Jeffrey Cox, Maximum Ventures Holdings LLC, Harmony Ridge Corp., or Avatele Group LLC.

Accordingly, the Court should grant the U.S. Attorney's motions to intervene and to stay discovery until after the criminal proceedings are resolved.

**A. Background**

**1. The Pending Criminal Case**

On August 9, 2022, a federal grand jury in the Northern District of Georgia returned an indictment against defendants Rahim Mohamed, Richard Tang, Davies Wong, Breanne Wong, Phillip Sewell, Zoltan Nagy, Christophe Merani, Glenn Laken, and Jeffrey Cox.  (*See United States v. Mohamed*, *et al.*, 1:22-CR-00283-VMC-CMS, Doc. 1).

The charges in the indictment flow from two alleged market manipulation schemes: the manipulated trading of shares of Lotus in August 2017 through September 2017, and the manipulated trading of shares of Good Gaming in

January 2018.  In Counts 1 through 8, seven defendants are charged with conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349; three counts of wire fraud, in violation of 18 U.S.C. § 1343; conspiracy to commit securities fraud, in violation of 18 U.S.C. § 371; and three counts of securities fraud, in violation of 15 U.S.C. §§ 78j(b) & 78ff and 17 C.F.R. § 240.10b-5 arising from the trading of Lotus shares.  In Counts 9 through 20, four defendants are charged with conspiracy to commit wire fraud, four counts of wire fraud, conspiracy to commit securities fraud, and four counts of securities fraud arising from the trading of Good Gaming shares. For both schemes, the indictment alleges that the respective defendants acquired large quantities of Lotus and Good Gaming shares, gained unauthorized access to customer accounts at online brokerage firms, and forced purchases of those two stocks in the hacked accounts, which permitted the defendants to sell large blocks of shares at artificially inflated prices. (*United States v. Mohamed*, *et al.*, 1:22-CR-00283-VMC-CMS, Doc. 1 ¶¶ 17–19.)

On October 3, 2022, defendants Merani and Laken were arraigned. (*Id.*, Docs. 34 & 36.) The remaining defendants are believed to be located outside the United States and have not made an initial appearance in the criminal action.

### 2.  The Pending SEC Civil Action

On August 15, 2022, less than a week after the filing of the criminal indictment, the SEC filed the above-captioned civil action against the same nine defendants in the criminal case, three additional individual defendants, five corporate defendants, and two relief defendants. The Complaint alleges the same

market manipulation scheme involving trading in the same two companies, Lotus and Good Gaming, during 2017 and 2018. Specifically, for both schemes, the Complaint alleges that the defendants acquired large quantities of Lotus and Good Gaming shares, gained unauthorized access to customer accounts at online brokerage firms, and forced purchases of those two stocks in the hacked accounts, which permitted the defendants to sell large blocks of shares at artificially inflated prices. (Doc. 1 ¶¶ 1, 7–8, 50–54, 57–66, 72–78, 95–101, 115–117, 135–140.)

## ARGUMENT

### A. The U.S. Attorney should be granted permission to intervene.

The U.S. Attorney seeks to intervene in this case under Rule 24 of the Federal Rules of Civil Procedure. Rule 24(a)(2) provides for intervention as of right when the movant "claims an interest relating to the property or transaction which is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest." Rule 24(b)(2) provides for permissive intervention when the movant "has a claim or defense that shares with the main action a common question of law or fact." The U.S. Attorney respectfully submits that its application satisfies both of these provisions.

Courts routinely allow the U.S. Attorney to intervene in SEC civil enforcement actions to seek a stay of discovery until the resolution of related criminal cases, as "[i]t is well established that the United States Attorney may intervene in a federal civil action to seek a stay of discovery when there is a parallel

criminal proceeding, which is anticipated or already underway, that involves common questions of law or fact." *SEC v. Downe*, No. 92-Civ-4092 (PKL), 1993 WL 22126, at *11 (S.D.N.Y. Jan. 26, 1993) (granting United States leave to intervene to seek discovery stay in SEC case in deference to related criminal investigation); *see also SEC v. Chestman*, 861 F.2d 49 (2d Cir. 1988) (affirming order granting United States leave to intervene in SEC action pending resolution of related criminal investigation); *SEC v. Nicholas*, 569 F. Supp. 2d 1065, 1068 (C.D. Cal. 2008) (granting United States leave to intervene to seek discovery stay in SEC case during pendency of related criminal case); *SEC v. Doody*, 186 F. Supp. 2d 379, 381 (S.D.N.Y. 2002) (granting United States leave to intervene to seek discovery stay in SEC case during pendency of related criminal case, observing that "[o]nce an indictment has been returned, the government often moves for and frequently obtains relief preventing a criminal defendant from using parallel civil proceedings to gain premature access to evidence and information pertinent to the criminal case"); *SEC v. Mersky*, CIV–A–93–5200, 1994 WL 22305, at *1-*2 (E.D. Pa. Jan. 25, 1994) (granting United States leave to intervene to seek discovery stay in SEC case until resolution of related criminal investigation, opining that "[c]ourts have almost universally permitted the United States to intervene in actions such as the present case").

The U.S. Attorney has a strong law enforcement interest in managing the scope and manner of discovery in the criminal case, protecting the integrity of the criminal proceedings and the truth-seeking process, and preventing the civil discovery process from impairing or influencing the evidence and testimony that

is expected to be offered in the criminal case. *See, e.g., SEC v. Mutuals.com, Inc.*, No. 3:03-CV-2912-D, 2004 WL 1629929, at *1-2 (N.D. Tex. July 20, 2004) (granting United States leave to intervene as of right to stay discovery in SEC enforcement action in deference to related criminal case based on law enforcement interest in preventing use of civil discovery to circumvent criminal discovery rules, and recognizing inability of SEC to protect U.S. Attorney's interest given SEC's obligation to follow civil discovery rules); *Se. Recovery Grp., LLC v. BP Am., Inc.*, 278 F.R.D. 162, 167 (E.D. La. 2012) (granting United States leave to intervene in breach of contract suit arising out of Deepwater Horizon explosion and oil spill because, "[w]hether characterized as 'of right' or 'permissive,' . . . the transaction that is the subject of this civil lawsuit is identical to the transaction that is the subject of the criminal investigation," "the civil and criminal matters share common questions of law and fact relating to fraud allegedly perpetrated by plaintiff and/or its principals and/or their associates," and "permitting the broad-ranging discovery planned by the civil parties, 'may as a practical matter impair or impede the [government's] ability to protect its interest'" (second alteration in original)). Federal courts have also recognized that intervention is especially justified where, as here, the United States seeks to intervene "for the limited purpose of moving to stay discovery." *Twenty First Century Corp. v. LaBianca*, 801 F. Supp. 1007, 1009 (E.D.N.Y. 1992); *see also First Merchant's Enterprises, Inc. v. Shannon*, No. 88-CV-8254-CSH, 1989 WL 25214, at *2 (S.D.N.Y. 1989) ("[W]here the government contends that an ongoing criminal investigation would be prejudiced were certain civil discovery concerning the same facts and

circumstances to proceed, permissive intervention to argue that claim is appropriate.").

Accordingly, the U.S. Attorney should be permitted to intervene in this case for the limited purpose of seeking a stay of discovery to protect the integrity of the federal criminal proceedings.

### B.  This Court should stay discovery to protect the public interest in law enforcement and the integrity of the criminal prosecution.

The Court should likewise grant the U.S. Attorney's motion for a stay of discovery pending the resolution of the criminal case.  A court "has broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706-07 (1997) (citing *Landis v. N. American Co.*, 299 U.S. 248, 254 (1936)). Although parallel civil and criminal proceedings are permissible, a court has discretion to stay "one of the proceedings pending completion of the other." *SEC v. First Fin. Group of Tex., Inc.*, 659 F.2d 660, 667 (5th Cir. 1981); *see also Wehling v. Columbia Broadcasting Sys.*, 608 F.2d 1084, 1089 (5th Cir. 1979) (concluding that three-year stay of civil action, although "undesirable," was preferable because it would not impose undue hardship on defendant and would protect party from unnecessary adverse consequences in light of potential criminal prosecution).[1]

---

[1]In *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent decisions of the Fifth Circuit, including Unit A panel decisions of that circuit, handed down prior to October 1, 1981.

Federal courts regularly grant requests to stay discovery in parallel civil proceedings in order to protect criminal cases and investigations prior to and after indictment.  *See, e.g., Doe v. Smith*, No. 3:17-CV-38-TCB, 2017 WL 11584833, at *2 (N.D. Ga. July 17, 2017) (staying civil Section 1983 case pending resolution of related criminal case pending against the plaintiff); *Rogers v. City of Atlanta*, 214 F. Supp. 3d 1314, 1319 (N.D. Ga. 2016) (granting defendant's motion to stay civil action pending resolution of criminal charges against him, concluding that "[w]ithout a doubt, the pending criminal charges against [defendant] warrant a stay of discovery"); *SEC v. Rand*, No. 1:09-CV-01780-AJB, 2010 WL 11549601, at *12 (N.D. Ga. Dec. 14, 2010) (granting limited stay of discovery in SEC enforcement action pending resolution of related criminal case); *United States v. Any And All Assets Of That Certain Business Known As Shane Company*, 147 F.R.D. 99, 101-102 (M.D.N.C. 1993) (granting stay of discovery in civil forfeiture action pending federal grand jury investigation involving same and related facts); *Downe*, 1993 WL 22126, at *14 (granting stay of discovery in SEC enforcement action pending federal grand jury investigation); *United States v. One 1964 Cadillac Coupe DeVille*, 41 F.R.D. 352, 353 (S.D.N.Y. 1966) ("[W]here both civil and criminal proceedings arise out of the same or related transactions the government is ordinarily entitled to a stay of all discovery in the civil case until disposition of the criminal matter.").

In exercising their discretion to stay discovery in a civil case in deference to a criminal proceeding, federal courts are required to balance the civil litigant's right to "prepare his case promptly" against the public interest in postponing the

full disclosure sought in the civil case until after the resolution of the criminal proceeding. *Campbell v. Eastland*, 307 F.2d 478, 490 (5th Cir. 1962), *cert. denied*, 371 U.S. 955 (1963). In *Campbell*, the former Fifth Circuit observed that in engaging in this flexible inquiry, the public interest in law enforcement is of paramount importance. *Id*. at 487. Specifically, the court opined:

> The very fact that there is clear distinction between civil and criminal actions requires a government policy determination of priority: which case should be tried first. *Administrative policy gives priority to the public interest in law enforcement*. This seems so necessary and wise that a trial judge should give *substantial weight* to it in balancing the policy against the right of a civil litigant to a reasonably prompt determination of his civil claims or liabilities.

*Id*. (emphasis added). The Supreme Court has also recognized "that there is a lesser public interest in actions for civil damages than, for example, in criminal prosecutions." *Nixon v. Fitzgerald*, 457 U.S. 731, 754 n.37 (1982); *see also In re Grand Jury Proceedings (Williams)*, 995 F.2d 1013, 1017 (11th Cir. 1993) ("We will not sacrifice the integrity of a grand jury investigation simply to speed the disposition of a civil docket.").

In evaluating a stay request, courts balance competing interests. *See Landis*, 299 U.S. at 254-55. The Supreme Court has provided guidance by noting that a stay is appropriate if the "delay [is] not immoderate in extent and not oppressive in its consequences" and "the public welfare or convenience will thereby be promoted." *Id.* at 256. For parallel civil and criminal proceedings,

10

federal courts have considered the following factors to evaluate whether a stay is appropriate:[2]

> (1) the extent to which the issues in the civil and criminal cases overlap; (2) the status of the case, including whether defendant has been indicted; (3) the interests the plaintiff in proceeding expeditiously versus the prejudice to the plaintiff resulting from the delay; (4) the interests of, and burden on, the defendant; (5) the interests of the Court; and (6) the public's interest.

*Rand*, 2010 WL 11549601, at *4–5 (compiling cases and applying the above six-factor balancing test).  In this case, every factor weighs in favor of the requested stay.

### 1.  Overlap of civil and criminal cases

"[T]he similarity of issues in the underlying civil and criminal actions is considered the most important threshold issue in determining whether to grant a stay." *Love v. City of Lanett*, No. 2:09-cv-622, 2009 WL 2525371, *2 (M.D. Ala. Aug. 17, 2009) (quoting *Dominguez v. Hartford Fin. Servs.*, 530 F. Supp. 2d 902, 906-07 (S.D. Tex. 2008)).  Courts place heavy weight on this factor in considering a stay in the context of pending criminal cases because "self-incrimination is more

---

[2] When the proponent of the stay is a civil litigant, and the United States opposes the stay and wishes to proceed with parallel actions simultaneously, the Eleventh Circuit requires a stay "pending resolution of a related criminal prosecution only when 'special circumstances' so require in the 'interests of justice.'" *United States v. Lot 5, Fox Grove, Alachua Cty., Fla.*, 23 F.3d 359, 364 (11th Cir. 1994) (quoting *United States v. Kordel*, 397 U.S. 1, 12 & n.27 (1970)). In such cases, unlike the case here, there is no compelling law enforcement interest in a stay because the U.S. Attorney opposes the stay.

likely if there is a significant overlap." *Trustees of Plumbers & Pipefitters Nat. Pension Fund v. Transworld Mech., Inc.*, 886 F. Supp. 1134, 1139 (S.D.N.Y. 1995).

Here, there is clear and substantial overlap between the parallel cases. The criminal and civil actions both allege violations of federal securities laws arising from the same market manipulation scheme of the same stock tickers during the same time frame. This factor weighs heavily in favor of a stay.

### 2. Status of the criminal case

"Courts generally recognize that the case for a stay is strongest where the defendant has already been indicted." *Rand*, 2010 WL 11549601, at *6. Nine defendants in the SEC civil enforcement action have been indicted in the criminal case, and counsel for the three additional individual defendants in the SEC action do not oppose a stay of discovery. Although extradition proceedings will likely be necessary for several of the defendants, the criminal case will likely resolve quickly after their initial appearance due to Speedy Trial Act considerations. Accordingly, this factor weighs in favor of the requested stay.

### 3. Interests of the plaintiff in proceeding expeditiously versus the prejudice to the plaintiff resulting from the delay

The SEC has indicated that it does not object to the requested stay of discovery. The proposed discovery stay would not impact SEC efforts to serve remaining defendants or any settlement negotiations or resolutions. "Since the SEC believes that a stay does not affect its interests, this factor weighs in favor of the stay." *Id.*

12

The United States as the intervenor-plaintiff also has a significant interest in preventing the use of civil discovery to circumvent the limits on criminal discovery. *See Rand*, 2010 WL 11549601, at *7–8 (considering interests of United States as intervenor-plaintiff under this factor and concluding that the government's concern with broader civil discovery was "valid" and favored a stay of discovery); *Chestman*, 861 F.2d at 50; *Phillip Morris Inc. v. Heinrich*, No. 95-Civ.0328, 1996 WL 363156, at *19 (S.D.N.Y. June 28, 1996) (recognizing that without stay, targets of criminal investigation "may have an opportunity to gain evidence to which they are not entitled under criminal discovery rules"); *Mersky*, 1994 WL 22305, at *4 (granting stay over defendant's objection and noting that "[t]he United States' interest in preventing the defendants from circumventing the limited discovery available in the criminal proceeding is substantial.").

The Fifth Circuit in *Campbell* observed that in considering a stay request in parallel proceedings, judges "should be sensitive to the difference in the rules of discovery in civil and criminal cases[,]" where civil litigants can employ "a well-stocked battery of discovery procedures, [while] the rules governing criminal discovery are far more restrictive." *Id.* The court explained that

> the narrow scope of discovery in criminal litigation is justified by three considerations . . . peculiar to criminal law. First, . . . a fear that broad disclosure of the essentials of the prosecution's case would result in perjury and manufactured evidence. Second, . . . that revealing the identity of confidential informants would create the opportunity for intimidation of prospective witnesses and would discourage the giving of information to the government . . . [and] [f]inally, . . . since the self-incrimination privilege would effectively block any attempts to discover from the defendant, he would retain

> the opportunity to surprise the prosecution whereas the state would
> be unable to obtain additional facts.

*Id*. at 487 n.12.  Consequently, federal criminal discovery is carefully circumscribed by the Federal Rules of Criminal Procedure, 18 U.S.C. § 3500, and Supreme Court decisions.  There is no requirement to identify trial witnesses or where discoverable evidence may be found, and there are no interrogatories, requests for admission, or requests for the production of documents.  *See, e.g., United States v. Conder*, 423 F.2d 904, 910 (6th Cir. 1970) (holding that Federal Rules of Criminal Procedure do not authorize interrogatories or discovery of names of government witnesses); *United States v. Linen Supply Inst. of Greater New York*, 18 F.R.D. 452, 453 (S.D.N.Y. 1955) ("The Federal Rules of Criminal Procedure make no provision for answers to interrogatories.").  After an indictment is returned, neither the United States nor a criminal defendant has unbridled discretion to issue subpoenas for documents or testimony, and they may do so only for a specific evidentiary hearing or trial that has been scheduled. Fed. R. Crim. P. 17(a).  To issue a document subpoena under any other circumstances, a criminal defendant must first file a motion to obtain the approval of the court and make the requisite showing.  *See, e.g., United States v. Messercola*, 701 F. Supp. 482, 485 (D.N.J. 1988) (describing procedure for obtaining judicial approval for a pretrial subpoena).  And a criminal defendant is permitted to subpoena personal or confidential information about a victim only after the court gives the victim notice of the subpoena and the opportunity to object or quash it, and then only with a court order permitting the defendant to serve it. Fed. R. Crim. P. 17(c)(3).

Perhaps most importantly, unlike civil litigation, there are no depositions in federal criminal cases. *Campbell*, 307 F.2d at 487 ("18 U.S.C. § 3500 does away with any pre-trial discovery of statements of a government witness"); *Simon v. United States*, 644 F.2d 490, 498 n.12 (5th Cir. May 7, 1981) ("In criminal proceedings, depositions may be taken only in exceptional circumstances upon order of court and after notice to the other parties; and the only authorized purpose is to preserve evidence, not to afford discovery.").  Instead, "[i]n any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subp[o]ena, discovery, or inspection until said witness has testified on direct examination in the trial of the case."  18 U.S.C. § 3500; *see also* Fed. R. Crim. P. 16(a)(2) ("Nor does this rule authorize the discovery or inspection of statements made by prospective government witnesses except as provided in 18 U.S.C. §3500").  Because a federal criminal defendant is not entitled to subpoena potential trial witnesses in order to compel them to provide him with sworn testimony or other statements in advance of his or her criminal trial, to allow a criminal defendant to do so in a parallel civil case would be "tantamount to allowing discovery under Federal Rules of Civil Procedure in a criminal proceeding," a result that the former Fifth Circuit recognized it was "powerless, as was the trial court, to authorize."  *Campbell*, 307 F.2d at 493 (Bell, J., concurring).

Accordingly, depositions and interrogatories in the civil case would effectively provide an end-run around the constraints imposed by Fed. R. Crim. P. 16 and the Jencks Act, 18 U.S.C. § 3500. Moreover, depositions could impair the usefulness of witnesses whom the Government expects to call at the criminal trial. *See WorldCom Securities Litigation*, No. 02 CIV. 3288(DLC), 2002 WL 31729501, at *9 (S.D.N.Y. Dec. 5, 2003) (observing that United States Attorney "has a significant interest in preserving the usefulness of cooperating defendants as Government witnesses"); *see also SEC v. Mutuals.com, Inc.*, 2004 WL 1629929, 4 (N.D. Tex. 2004) (granting stay over defendant's objection and noting that there is no right to depositions in a criminal case).

A criminal defendant "should not be allowed to make use of the liberal discovery procedures applicable to a civil suit as a dodge to avoid the restrictions in criminal discovery and thereby obtain documents he would not otherwise be entitled to use in his criminal suit." *Campbell*, 307 F.2d at 487. Allowing civil discovery to proceed would undermine the important interests favoring limited criminal discovery, as recognized by the *Campbell* Court. This factor strongly weighs in favor of a stay.

### 4. Interests of, and burden on, the defendants

In light of the pending criminal case, the interest in expeditious resolution of the civil action is "trumped by defendants' interests in avoiding the quandary of choosing between waiving their Fifth Amendment rights or effectively forfeiting the civil case." *Trustees of Plumbers & Pipefitters Nat. Pension Fund*, 886 F. Supp. at 1140; *see also Allstate Ins. Co. v. Good*, No. 1:15-CV-0468-AT, 2015 WL 12227728, at

16

*3 (N.D. Ga. July 27, 2015) (granting stay pending resolution of criminal case because "Defendants may be prejudiced by invoking their constitutional right against self-incrimination" if civil discovery proceeded). If discovery in this civil action proceeded, the defendants would almost certainly be deposed by the SEC and would face the dilemma of providing substantive testimony that might incriminate them in the criminal case due to the significantly overlapping issues or invoking their Fifth Amendment right against self-incrimination, which would permit the Court to draw an "adverse inference" against them in the civil action. *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976). Although the corporate defendants do not have a Fifth Amendment privilege against self-incrimination, proceeding with the civil action against only those defendants would prejudice them for two reasons. First, the corporate defendants may be hamstrung in their efforts to defend themselves without the testimony of the individual defendants. The Complaint alleges that each corporate defendant is controlled or owned by individual defendants in this case. Doc. 1 ¶¶ 19, 21, 22, 24, 28. If those individual defendants invoked their right against self-incrimination, the corporate defendants may not be able to present testimony in their defense and an adverse inference may be taken against the corporate defendants. Second, granting a stay as to only the individual defendants would result in piece-meal discovery and "duplicative discovery efforts," which would be inefficient and costly for the parties. *Trustees of Plumbers & Pipefitters Nat. Pension Fund*, 886 F. Supp. at 1141.

Only one defendant has expressed opposition to the requested stay. Counsel for twelve of the eighteen civil defendants do not oppose, or are not expected to

oppose, a stay of discovery, and the remaining six defendants have not expressed their position on a stay. This factor weighs in favor of the stay as well.

### 5. Interests of the Court

A court may consider its interest in "efficient administration and judicial economy." *SEC v. Gordon*, No. 09-CV-0061-CVE-FHM, 2009 WL 2252119, at *4 (N.D. Okla. July 28, 2009) (quoting *United States ex rel. Gonzalez v. Fresenius Med. Care N. Am.*, 571 F. Supp. 2d 758, 763 (W.D. Tex. 2008)). Judicial economy weighs in favor of staying this case. The Eleventh Circuit has recognized that collateral estoppel may "prevent relitigation of issues subsequently brought in a civil suit to the related issues determined in the criminal proceedings." *See In re Fin. Federated Title and Trust, Inc.*, 347 F.3d 880, 886 n.5 (11th Cir. 2003); *see also Emich Motors Corp. v. General Motors Corp.*, 340 U.S. 558, 568-69 (1951). Therefore, "[a]lthough stays delay civil proceedings, they may prove useful as the criminal process may determine and narrow the remaining civil issues." *Grand Jury Proceedings (Williams) v. United States*, 995 F.2d 1013, 1018 n.11 (11th Cir. 1993); *see also Doe v. Smith*, No. 3:17-CV-38-TCB, 2017 WL 11584833, at *1 (N.D. Ga. July 17, 2017) (granting stay because "[r]esolution of the criminal case is . . . reasonably likely to narrow the remaining issues to be litigated in this civil case). Finally, "resolution of the criminal case may increase the possibility of settlement of the civil case due to the high standard of proof required in a criminal prosecution." *Trustees of Plumbers & Pipefitters Nat. Pension Fund*, 886 F. Supp. at 1140.

In short, a stay of civil discovery pending the resolution of the criminal case will likely narrow the issues in this case, reduce the amount of discovery needed,

avoid duplicative or conflicting rulings by different courts, and increase the likelihood that at least some defendants would settle the civil action.

### 6. Public Interest

The *Campbell* Court concluded that the U.S. Attorney's view on whether the law enforcement interest warrants a stay should be given "substantial weight," and also that the public interest in a criminal prosecution trumps a civil litigant's interest in pressing forward with his or her case. *Campbell*, 307 F.2d at 490.

The United States believes that the requested stay is in the public interest here for several reasons. First, since a criminal indictment is pending with significant overlap in the alleged facts and scheme, the "criminal prosecution will serve to advance the public interests at stake" in the civil action. *Trustees of Plumbers & Pipefitters Nat. Pension Fund*, 886 F. Supp. at 1140. Similar public interests are implicated in both actions based on the overlapping fact patterns and statutory violations at issue. Second, a stay serves the public interest by advancing the goals of both civil and criminal discovery. If civil discovery continued in this case, the defendants may attempt to use the Fifth Amendment as both a shield and a sword — it would enable them to "us[e] civil discovery to their advantage in the criminal investigation while taking the Fifth Amendment to avoid testifying" themselves. *SEC v. Beacon Hill Asset Mgmt.*, No. 02-Civ-8855, 2004 WL 367673, at *1 (S.D.N.Y. Feb. 25, 2004). If so, not only would the criminal discovery rules be subverted, but also the civil discovery rules would be undermined through a one-sided exchange of information. *See Nicholas*, 569 F. Supp. 2d at 1070 ("The specter of . . . witnesses invoking their Fifth Amendment

rights would render civil discovery largely one-sided.") Finally, a stay of all discovery would serve the public interest by conserving limited judicial resources.

For these reasons, the Court should exercise its discretion to stay discovery in this case until the completion of the criminal case.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court grant its motion to intervene and for a stay of discovery in this case pending the resolution of *United States v. Mohamed*, *et al.*, 1:22-CR-00283-VMC-CMS, (N.D. Ga.), and that the Court preliminarily stay discovery in this case pending the resolution of the United States' motion.

Respectfully submitted,

RYAN K. BUCHANAN
   *United States Attorney*

*Tal Chaiken*

TAL C. CHAIKEN
   *Assistant United States Attorney*
Georgia Bar No. 273949
Tal.Chaiken@usdoj.gov

**Certificate of Service**

The United States Attorney's Office served this document today by filing it using the Court's CM/ECF system, which automatically notifies the parties and counsel of record.

February 2, 2023

*Tal Chaiken*
_____

TAL C. CHAIKEN

*Assistant United States Attorney*